CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
2/8/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| TAMMY P.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 6:22cv00005 |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION**[2]

Plaintiff Tammy P. ("Tammy") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") and supplemental security income ("SSI"), prior to January 1, 2019[3], under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; 42 U.S.C. §§ 1381–1383f. Tammy had previously sought judicial review of a final decision denying her claim for disability benefits and this court remanded her case to the Commissioner for further administrative proceedings. Tammy alleges that the Administrative Law Judge ("ALJ") erred by failing to properly assess her subjective complaints. I conclude that substantial evidence supports the Commissioner's decision in all respects.  Accordingly, I **RECOMMEND GRANTING** the

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c). Dkt. 14.

[3] Tammy filed a subsequent SSI application on January 1, 2019 and was found disabled by the state agency as of this filing date. R. 1423. The ALJ declined to reopen the favorable finding as of January 1, 2019, and thus the relevant period at issue here is from the amended alleged onset date to December 31, 2018.

Commissioner's Motion for Summary Judgment (Dkt. 19) and **DENYING** Tammy's Motion for Summary Judgment (Dkt. 16).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Tammy failed to demonstrate that she was disabled under the Act.[4] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

---

[4] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience.  See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

## **CLAIM HISTORY**

Tammy filed for DIB and SSI in September 2014, and alleges her disability began on December 30, 2014, due to anxiety disorder, depression, back problem, fibromyalgia, bipolar disorder, brain injury, high blood pressure, high cholesterol, liver disease, and low blood sugar.[5] R. 278, 1423. Tammy's date last insured is September 30, 2016[6]; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 81, 1424; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). In November 2017, after holding a hearing, ALJ Jeffrey Schueler, issued an unfavorable ruling denying Tammy's claim. R. 10–25. The Appeals Council denied Tammy's request for review and Tammy filed a civil action in this court challenging that decision. See Tammy P. v. Commissioner, Case No. 6:19cv00001.

This court remanded the case to the Commissioner for further administrative proceedings on June 4, 2021. The Appeals Council then vacated ALJ Schueler's decision and sent the case to ALJ Thomas Erwin for rehearing and to issue a new decision. In its Order, the Appeals Council explained:

> While the case was pending in federal court, the claimant raised a challenge under the Appointments Clause of the Constitution, U.S. Art. II § 2, cl. 2, to the manner in which the Administrative Law Judge was appointed. In accordance with the district court's remand order, this case is remanded to a different Administrative Law Judge in light of the ruling in Carr v. Saul, [141 S. Ct. 1352] (2021). Any Appointments Clause defect is cured by this remand because on July 16, 2018, the Acting Commissioner of the Social Security Administration ratified all Administrative Law Judge appointments and approved them as her own.

---

[5] At the hearing with the ALJ, Tammy amended her alleged onset date from January 31, 2011 to December 30, 2014. R. 82, 1423, 1455. The ALJ's decision refers to her original alleged onset date at R. 1440; However, this appears to be a typographical error, as the amended onset date is used in other parts of the decision, and the ALJ specifically writes that Tammy amended her onset date at the hearing. R. 1423.

[6] Tammy was 50 years old on her on her date last insured, making her a person approaching advanced age under the Act. R. 1439.

R. 1546. The Appeals Council further noted that Tammy had filed a subsequent claim for SSI benefits on January 1, 2019, and the state agency had found her disabled as of this date. Because ALJ Schueler did not reopen that disability determination, the relevant period is now prior to January 1, 2019. Id.

ALJ Schueler held a hearing on October 6, 2021. R. 1447–83. Counsel represented Tammy at the hearing, which included testimony from vocational expert Asheley Wells. The ALJ issued a second unfavorable decision on December 14, 2021, analyzing Tammy's claims under the familiar five-step process[7] and denying her claim for benefits. R. 1423–40.

The ALJ found that Tammy suffered from the severe impairments of degenerative disc disease, obesity, chronic obstructive pulmonary disease ("COPD"), depression, adjustment disorder, personality disorder, post-traumatic stress disorder ("PTSD"), bipolar, panic disorder, and a substance use disorder. R. 1426. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 1426. The ALJ specifically considered listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), listing 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), listing 1.17 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint), listing 1.18 (abnormality of a major joint in any extremity), listing 1.19 (pathologic fractures due to any cause), listing 3.02 (chronic respiratory disorders), listing 12.04 (depressive,

---

[7] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curium) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

bipolar and related disorders), listing 12.06 (anxiety and obsessive-compulsive disorders), listing 12.08 (personality and impulse-control disorders), and listing 12.15 (trauma and stressor related disorders). R. 1426–27. The ALJ also considered Tammy's obesity under SSR 19-2p. R. 1427. The ALJ found that regarding her mental impairments, Tammy had a mild limitation in understanding, remembering, or applying information, and moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. R. 1427–28.

The ALJ concluded that Tammy retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 1429. Specifically, Tammy can have no exposure to unprotected heights or climbing ladders, ropes, or scaffolds, only occasional exposure to extreme heat and pulmonary irritants, and can perform frequent reaching. Id. She can perform instructions and tasks that can be learned in 30 days or less, perform occasional decision-making, and have occasional changes in work settings. She cannot perform production rate or pace work, defined as having to keep up with an assembly line or a job with strict daily or hourly quotas. Tammy can have no interaction with the public and only occasional interaction with coworkers and supervisors. R. 1430.

The ALJ determined that Tammy could not perform her past relevant work as a cashier, short order cook, and order selector, but that she could perform jobs that exist in significant numbers in the national economy, such as price marker, office helper, and mail clerk. R. 1439–40. Thus, the ALJ determined that Tammy had not been under a disability from January 31, 2011 through December 31, 2018. However, as stated, the ALJ did not reopen the finding that Tammy was entitled to SSI benefits beginning January 1, 2019. R. 1440. Tammy filed for direct review of the unfavorable decision in this court. See 20 C.F.R. § 404.984(d); Massey v. Saul, No. 1:19

CV 152 WCM, 2020 WL 4569606, at *1 (W.D.N.C. Aug. 7, 2020) (noting that "When a case is remanded by a federal court, the subsequent decision of the ALJ will become the final decision of the Commissioner unless the Appeals Council assumes jurisdiction over the case").

## ANALYSIS

### A. Medical History Overview

1. Medical Treatment

Tammy has a history of chronic back pain,[8] which worsened after a car accident on March 16, 2014.[9] On the day of the accident, Tammy was treated at the emergency room, complaining of head, neck, back and lower abdominal pain. R. 448. A cervical spine CT revealed degenerative disc disease and cervical spondylosis at C5-C6, and facet and atlantoaxial joint arthrosis. R. 452–455. Tammy returned to the emergency room a few days after the accident, complaining of persistent back pain and a bruised thigh. R. 494–96. She was discharged home and advised to follow up with her primary care provider as needed. Id. Tammy continued to complain of and seek treatment for chronic back pain, and/or sometimes leg numbness, throughout the relevant period and was prescribed medication, including Neurontin, Tylenol or Ibuprofen, Lidoderm patches, anti-inflammatories, and muscle relaxants. See e.g. R. 592, 1048, 1081, 1215–16, 1290, 1399, 2078. Tammy was also referred to physical therapy for her back pain in April 2015, and again in June 2016, along with referral to a pain management clinic. R. 1082, 1230. An MRI of Tammy's lumbar spine in June 2015 showed moderate facet

---

[8] Tammy challenges the ALJ's evaluation of her subjective complaints of back pain; thus, I will focus primarily on her back treatment here.

[9] Tammy writes in her brief that she was "in a coma for 14 days" after the accident and was "lucky to survive." Pl.'s Br. at 4, Dkt. 16. Tammy testified similarly at the hearing (R. 1467); However, her medical records from the 2014 car accident do not mention this coma. Instead, the records indicate Tammy had a concussion without coma. R. 494. Further, Tammy reported to Jeffrey B. Luckett, Ph.D., during her consultative evaluation in February 2015, that she lost consciousness for approximately 3.5 hours during the accident. R. 1066.

arthropathy with advanced grade 1, bordering on grade 2, anterolisthesis, and mild to moderate narrowing, and small posterial disc protrusion with no compromise of the central canal. 1100–01.

2. Medical Opinions

In February 2015 and July 2015, respectively, state agency physicians Tony Constant, M.D. and Bert Spetzler, M.D., reviewed the record and found that Tammy had no severe physical impairments. R. 86, 114. They wrote that "[p]hysical findings show mild cervical and lumbar [degenerative disc disease] with occasional complaints of pain and overall good response to minimal treatment, suggesting a non-severe ruling. Id. The ALJ gave these opinions little weight, writing that "the evidence supports the findings of severe impairments, including degenerative disc disease, COPD, and obesity." R. 1438.

In February 2015, Jeffrey B. Luckett, Ph.D. performed a consultative evaluation, finding that Tammy could perform simple and more difficult job tasks, but that regular attendance in the workplace would be a problem "given her ongoing pain condition." R. 1069. The ALJ gave Dr. Luckett's opinion little weight, writing it is not consistent with the medical evidence and noting that Dr. Luckett is a psychologist, who is "not trained or licensed to evaluate and treat physical pain." R. 1437.

**B. Subjective Allegations**

Tammy argues that the ALJ failed to properly evaluate her subjective complaints. In support, Tammy emphasizes that in her subsequent application, filed January 2019, the state agency physician found she was limited to sedentary work based on a consultative examination that occurred in May 2019. R. 1438. Tammy also discusses her complaints of back pain at treatment visits and at the hearing, writing that her "condition was chronic and unresolved following her motor vehicle accident in 2014." Pl.'s Br. at 9, Dkt. 16. Tammy complains that the

ALJ discounted her subjective complaints using "boilerplate" language and failed to provide specific reasons for discrediting her testimony about pain, as well as both improperly requiring objective medical evidence and misrepresenting the medical evidence. The Commissioner counters that the ALJ appropriately evaluated Tammy's subjective complaints of pain when assessing her RFC and that the evidence supported the ALJ's finding that Tammy was capable of light work during the time period at issue.[10]

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[11] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by

---

[10] The ALJ likewise acknowledged that Tammy had been found disabled on her subsequent claim, involving a later period. The ALJ explained that the state agency determined she was capable of sedentary work, and thus the medical-vocational guidelines directed that she be found disabled.

[11] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

The ALJ's opinion includes a complete discussion of Tammy's medical history and her hearing testimony, and the ALJ adequately supported his finding that Tammy's allegations were not entirely consistent with the medical evidence and other evidence in the record. Contrary to Tammy's claim, the ALJ did not merely rely on boilerplate language. Instead, he explained his decision using the medical record. Regarding objective evidence in the record, the ALJ noted that the MRIs showed "mostly mild degeneration and some moderate degeneration," but no severe canal stenosis, foraminal stenosis, or nerve root issues, with either unremarkable or minor findings on physical exam, as well as consistently normal gait and station. R. 1432. The ALJ also appropriately considered the role of objective evidence, acknowledging that "pain and symptoms are not always accompanied by objective evidence" and stating he would "not disregard [Tammy's] symptoms solely due to a lack of objective evidence." R. 1432. The ALJ then considered other treatment in the record, including medications, finding it has been essentially routine and conservative:

> [Tammy] took routine medication prescribed by her primary care practitioner. She was not a candidate for surgery, and she did not undergo injections or other procedures.

R. 1433.[12] The ALJ explained that the limitation to light work, as well as frequent reaching, accommodates Tammy's degenerative disc disease and its symptoms.

---

[12] As the Commissioner notes, Tammy had a trigger point injection in her right rhomboid muscle in March 2016. R. 1241. However, I find any failure to discuss this specific record does not warrant remand, as the ALJ sufficiently considered the treatment records related to Tammy's back and explained how he evaluated her complaints of back pain and symptoms. Likewise, injections are generally considered conservative treatment. See e.g. James v. Saul, No. 6:20-CV-03283-KFM, 2021 WL 9594376, at *4 (D.S.C. June 23, 2021) (noting that "as previously recognized in this curt, medication management and injections are generally considered conservative treatment") (collecting cases).

Tammy fails to specify what medical evidence she alleges the ALJ misrepresented, or how he misrepresented such evidence. Tammy does write that the "objective medical evidence" demonstrated "damage to her spine," and references her reports of "incontinence of stool from back pain." However, she points to an October 2020 record (R. 1914), which is outside the relevant period in this case. Here, the ALJ did not ignore or mischaracterize the medical evidence. He acknowledged Tammy's back pain, including finding her degenerative disc disease to be a severe impairment, and discussed her treatment history, including her spine CTs, and the doctors' findings on examination. R. 1431–32. The ALJ provided a fair picture of Tammy's complaints and treatment, both specifically acknowledging periods when Tammy reported ongoing or increasing, pain, and periods when Tammy did not mention active back pain at all. R. 1432. Thus, the ALJ appropriately considered both the objective evidence, and other evidence.

Likewise, the fact that Tammy was determined to be limited to sedentary work in her subsequent application is not an indication of error here. As the ALJ noted, the sedentary determination was based on a consultative examination from May 2019, which was after the relevant period here, which ended on December 31, 2018. R. 1438. As the ALJ explained, he gave no weight to this later determination because it was "not consistent with the medical evidence of record during the period at issue in this decision, i.e. before 2019." Id.

Finally, Tammy also states that the ALJ "relied on no medical opinions" to determine that she could perform a limited range of light work. Pl.'s Br. at 7, Dkt. 16. To the extent that Tammy is arguing that the ALJ was required to base the RFC on a specific medical opinion, this is inconsistent with the regulations. The RFC assessment is an administrative finding rather than a medical finding. Felton–Miller v. Astrue, 459 F. App'x 226, 230–21 (4th Cir. 2011) (stating that RFC "is an administrative assessment made by the Commissioner based on all the relevant

evidence in the case record") (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). In crafting the RFC, the ALJ must weigh the medical opinions appropriately and explain his decision and an ALJ is not required to obtain an expert medical opinion as to a claimant's RFC. Id. at 230–31; see also Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (noting that there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question").

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Tammy's subjective complaints with substantial evidence, and that Tammy is capable of performing work at the level stated in the ALJ's opinion, for the relevant period.

## CONCLUSION

For these reasons, an order will be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

Entered:  February 8, 2023

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge